## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **VANDAIRE KNOX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14−cv–193–SCW** |
| | ) | |
| **SHEARING,** | ) | |
| **POLLION,** | ) | |
| **L. CADY,** | ) | |
| **NWAOBASI, and** | ) | |
| **KIM BUTLER** | ) | |
| | ) | |
| **Defendants.** | | |

### MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### Introduction

Plaintiff filed this cause of action on February 14, 2014 while incarcerated at Menard Correctional Center, alleging deliberate indifference to serious medical needs against Defendants as a result of his knee pain and swelling. (Doc. 1). Upon threshold review, the Court determined that Plaintiff had stated a deliberate indifference claim against Defendants Shearing, Pollion, Cady, and Nwaobasi for failing to provide or renew Plaintiff's pain medication and/or continuing him on medication known to be ineffective and/or cause harmful side effects. (Doc. 7). Butler's predecessor, Warden Harrington, was added for the purposes of injunctive relief only, and Butler was substituted for him as Warden of Menard after she assumed that position. (Doc. 7).

1

On December 16, 2015, Defendant Cady and Defendants Nwaobasi, Pollion, and Shearing filed their respective motions for summary judgment. (Doc. 95) (Doc. 99). Butler did not join in any of the currently pending motions. Plaintiff then filed a motion seeking discovery he alleged he was entitled to and stating that he had not received all of the documents in support of Defendants' motions. (Doc. 103). The Court set that for a hearing, and subsequently appointed Plaintiff counsel on January 13, 2016. (Doc. 114). The Court then extended the time to respond to the pending motion for summary judgment by 60 days. (Doc. 114). Plaintiff filed a Response on March 4, 2016. (Doc. 121). Plaintiff's response requests relief pursuant to Federal Rule Civil Procedure 56(d). No reply has been filed, making this motion ripe for disposition.

## Legal Standards

### 1. Summary Judgment Standard

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** In determining whether a genuine issue of material fact exists, the Court must view the record in a light most

2

favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986).**

At summary judgment, the Court's role is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**.

### 2. Eighth Amendment Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d 645, 652–53 (7th Cir. 2005) (quoting** *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (internal quotation marks omitted)).** *Accord Rodriguez v. Plymouth Ambulance Serv.*, **577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.").** A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).**

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011),** *citing Johnson v. Snyder*, **444 F.3d 579, 584 (7th Cir. 2006).** The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, **658 F.3d at 750.** *Accord Greeno*, **414 F.3d at**

3

**653.** A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.  *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).** *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994) (violating the** *Eighth Amendment* **requires "deliberate indifference to a** *substantial* **risk of** *serious* **harm.") (internal quotation marks omitted) (emphasis added).**  Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable.  *Greeno v. Daley*, **414 F.3d 645, 652–53 (7th Cir. 2005).**

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health.  *Greeno*, **414 F.3d at 653.**  The plaintiff need not show the physician literally ignored his complaint, just that the physician was aware of the serious medical condition and either knowingly or recklessly disregarded it.  *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008).**  Courts give deference to physicians' treatment decisions, since "there is not one proper way to practice medicine, but rather a range of acceptable courses."  *Jackson v. Kotter*, **541 F.3d 688, 697–98 (7th Cir. 2008).**  A doctor who chooses one routine medical procedure over another does not violate the Eighth Amendment.  *McGowan v. Hulick*, **612 F.3d 636, 641 (7th Cir. 2010).**  *See also Estelle*, **429 U.S. at 107 (whether additional diagnostic techniques or treatments were needed was a "classic example of a matter for medical judgment.").**  However, persisting in a course of

treatment known to be ineffective states a claim under the Eighth Amendment. ***Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement).** Deliberate indifference may also be shown when a medical provider refuses to refer a patient to a specialist for treatment of a painful medical condition that clearly requires a referral. ***See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Snyder v. Hayes*, 546 F.3d 516, 526 (7th Cir. 2008).**

### FACTUAL BACKGROUND

Prior to 2002, Plaintiff was incarcerated at Cook County Jail in northern Illinois. (Doc. 100-1, p. 2). In 2002, he moved to Stateville Correctional Center. (Doc. 100-1, p. 3). Plaintiff moved back and forth between Stateville and Cook County jail on court writs during the period 2002-2011. (Doc. 100-1, p. 3) After his last writ to Cook County jail, he was transferred to Menard Correctional Center in 2012. (Doc. 100-1, p.7).

Plaintiff injured his knee while he was on a court writ in 2006. (Doc. 100-1, p. 3). Plaintiff testified that "it was sitting in a chair, and a bunch of guys fell on top of me and my knee was under the chair." (Doc. 100-1, p. 9). Since that time, his knee swells intermittently and slides "off-track." (Doc. 100-1, p. 3, 8). The swelling usually lasts a couple of days at a time. (Doc. 100-1, p. 8). Lying down helps with the swelling; moving, bending, standing and walking up stairs exacerbates it. (Doc. 100-1, p. 8). Plaintiff also sometimes experiences a sharp pain "out of nowhere." (Doc. 100-1, p. 10).

Tramadol numbs the pain he feels.  (Doc. 100-1 p. 10).  Ibuprofen, Mobic, and Tylenol do not help.  (Doc. 100-1, p. 10).

Plaintiff saw the Stateville doctor, who referred him to an outside hospital.  (Doc. 100-1, p. 3).  Plaintiff was also referred for an MRI, but left Stateville on another court writ before that could take place.  (Doc. 100-1, p. 4).  During the period 2009-2011, Plaintiff received Tramadol, and engaged in physical therapy for approximately 3-4 months.  (Doc. 100-1, p. 4).  He also had a knee brace for a time.  (Doc. 100-1, p. 5).

Upon arriving at Menard in January 2012, Plaintiff testified that he saw a doctor a couple of months after his arrival.  (Doc. 1)(Doc. 100-1, p. 4).  However, medical records that Plaintiff submitted with his complaint indicate that the medical staff had reviewed Plaintiff's transfer summary, added him to the asthma and seizure clinic, and continued him on Dilantin, Prilosec, Trazadone, Benadryl, an asthma inhaler, and Qrar in January 2012.   (Doc. 1-1, p. 28).   Plaintiff was also given a low bunk/low gallery permit.  (Doc. 1-1, p. 29).  It appears that he was scheduled for the doctor a couple of times, but not seen due to institutional lockdowns.  (Doc. 1-1, p. 29).   Plaintiff also refused to attend an asthma clinic on February 22, 2012.  (Doc. 1-1, p. 31).

Plaintiff was told that Menard had no medical records of his knee issues.  (Doc. 100-1, p. 4).  Plaintiff was seen by a caseworker on March 25, 2012 who referred him to the doctor or a nurse practitioner for his knee problems.  (Doc. 1-1, p. 24).  Plaintiff testified that on his first health care visit, he was offered something like Tylenol, but his knee was not examined. (Doc. 100-1, p. 5).   Plaintiff's Complaint contradicts this

version of events; it states that he gave Lohring a full history of his knee complaints, and asked for Tramadol, but Lohring told him she wanted to try a muscle relaxer and that she'd see him back in 30 days. (Doc. 1, p. 4).

The records show that Plaintiff first saw Lohring on March 31, 2012. (Doc. 51-2). Plaintiff reported that he had injured his knee two years prior. (Doc. 51-2). Lohring noted that Plaintiff had a limping gait and decreased range of motion. (Doc. 51-2). She prescribed him Mobic 15mg. (Doc. 51-2). Plaintiff was scheduled for a follow-up on April 28, 2012, but that visit was cancelled due to a lockdown. (Doc. 1-1, p. 36).

Dr. Nwaobasi saw Plaintiff on May 2, 2012 and prescribed Tylenol because Plaintiff reported that the Mobic was not working and told Nwaobasi that he previously had problems with ibuprofen. (Doc. 51-3). Nwaobasi also recommended that Plaintiff elevate his knee and gave him an extra blanket for six months. (Doc.51-3). Nwaobasi ordered a follow-up in two months. (Doc. 51-3). Plaintiff testified that he only had the blanket for a couple of weeks before security confiscated it while he was out of his cell. (Doc. 100-1, p. 11-12).

Nurse Groves then gave Plaintiff Motrin in lieu of Tylenol because Plaintiff reported the Tylenol was not working on June 13, 2012. (Doc. 51-4). Plaintiff's Complaint alleges that Groves told Plaintiff the Motrin would not work. (Doc. 1, p. 6).

Plaintiff then saw Dr. Nwaobasi again on June 20, 2012, at which time he prescribed Tramadol 50 mg for 1 month because Plaintiff reported that the Motrin and the Tylenol were not working. (Doc. 51-5).

Plaintiff saw CMT Groves on August 4, 2012 and requested more Tramodol. (Doc. 1-1, p. 47). She referred him to the doctor for a follow up. (Doc. 1-1, p. 47). It does not appear that Plaintiff was actually scheduled for a follow up, and an RN note from September 15, 2012 notes that Plaintiff should be placed on the MD referral list for an evaluation of his knee pain. (Doc. 1-1, p. 48).

Plaintiff's Tramodol prescription was renewed for 60 days by Pollion on September 21, 2012. (Doc. 51-6). Plaintiff told Pollion that none of the pain medications really helped and that they provided minimal relief. (Doc. 51-6). He also explained to her that he had been previously scheduled for an MRI at Stateville but that the MRI never happened because he had transferred to Menard. (Doc. 51-6). Pollion also noted moderate swelling and that Plaintiff walked with a limp. Pollion noted that Plaintiff had been seen by Nwaobasi, but specifically referred Plaintiff to Dr. Shepherd for further evaluation. (Doc. 51-6). Pollion's order regarding Shepherd was noted by Cady. (Doc. 51-6).

Pollion is a nurse practitioner and is licensed as an advanced practice nurse in Illinois. (Doc. 100-3, p. 2).

Cady is employed as a Corrections Nurse II at Menard. (Doc. 96-1, p. 1). She is a registered nurse, and not licensed to prescribe medication, diagnose, or make treatment decisions. (Doc. 96-1, p. 1).

Plaintiff had an appointment on November 3, 2012 that he failed to appear for. (Doc. 1-1. P. 52). He was recalled on November 7, 2012, but not seen. (Doc. 1-1, p. 52).

8

He was then rescheduled for November 17, 2012, but the line was not run due to staffing shortages. (Doc. 1-1, p. 52).

Dr. Nwaobasi evaluated Plaintiff on December 1, 2012, at which time he noted swelling, but not effusion. (Doc. 51-7). He prescribed Motrin 600 mg and Robaxin, a muscle relaxant. (Doc. 51-7). He also referred Plaintiff for an x-ray of his knee joint and scheduled a follow-up visit three months later. (Doc. 51-7). On December 5, 2012, Plaintiff had the x-ray, which showed a small knee joint effusion, no acute regional bony facture or dislocation, and a small calcification. (Doc. 51-8).

Pollion saw Plaintiff on January 2, 2013 for his seizure disorder clinic and issued him a low-bunk permit and a large knee sleeve. (Doc. 51-9). She also made an appointment with Dr. Shearing for pain management. (Doc. 51-9). Cady noted those orders. (Doc. 51-9). Plaintiff refused to go to an appointment on February 27, 2013 with Augusta Macuira because he refused to pay the $5 co-pay because he thought his knee should be considered a chronic condition. (Doc. 51-10).

A note on March 5, 2013 indicates that Plaintiff was scheduled to be seen that day for a follow-up visit from his December 1, 2012 appointment, but that he was not seen that day. (Doc. 1-1, p. 58). There are no records that this visit was rescheduled, and it is not clear that Nwaobasi ever met with Plaintiff to discuss his x-ray results.

Nurse Pollion saw Plaintiff again on April 10, 2013 for seizure and asthma clinics and asked Plaintiff to sign a records release form so the medical unit could receive a

copy of his MRI results.[1]  (Doc. 51-11).   She also again referred Plaintiff to Shearing to evaluate his left knee.  (Doc. 51-11).   On that date, Plaintiff reported that his swelling and pain were intermittent.  (Doc. 51-11).   Pollion's orders were noted by Cady.  (Doc. 51-11).

Plaintiff was seen again for his knee pain on May 1, 2013 by Shearing and was told that the health care unit was waiting to receive records from Cook County.  (Doc. 51-12) (Doc. 100-2, p. 3).  Shearing noted no swelling currently and took Plaintiff's vital signs.  He requested a follow-up but ordered no other treatment.

Pollion noted Plaintiff's pain again on September 12, 2013 during his chronic clinics for asthma and seizures.  (Doc. 51-13).

Plaintiff was scheduled for a clinic to address his knee pain again on February 17, 2014, but again refused to pay his $5 copay.  (Doc. 51-14).  Nurse Pollion saw Plaintiff on February 28, 2014 at his annual asthma clinic, renewed his knee brace permit, prescribed Motrin 200 mg a day and had him sign another medical records release. (Doc. 51-15).

### DISCUSSION

**Plaintiff's 56(d) Argument**

Plaintiff has not argued that Defendants are not entitled to summary judgment on the merits.  Rather, Plaintiff has invoked Federal Rule of Civil Procedure 56(d) for

---

[1] Although Plaintiff testified at his deposition that he had merely been scheduled for an MRI, at other points in the record he states that he had one and was scheduled for a second that he did not receive.

the proposition that he requires more discovery prior to responding to the summary judgment motion. (Doc. 121). Rule 56(d) provides: "If a party opposing the motion shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: 1) defer considering the motion or deny it; 2) allow time to obtain affidavits or declarations or to take discovery; or 3) issue any other appropriate order." The burden is on the non-movant to establish that additional discovery is required. *Sterk v. Redbox Automated Retail LLC*, **770 F.3d 618, 627-28 (7th Cir. 2014)**. The party making the request must point to specific information that is material to the Court's resolution of the summary judgment motion; *id.* **at 628,** vague generalities will not suffice. *Woods v. City of Chicago*, **234 F.3d 979, 990-991 (7th Cir. 2001).** Nor is the rule meant to protect a party who has been delinquent in pursuing discovery. *See Yaodi Hu v. Park Nat. Bank*, **333 F. App'x 87, 89-90 (7th Cir. 2009) (finding that the district court was within its discretion to deny a pro-se litigant the chance for further discovery when he had failed to obtain discoverable information within the allotted time frame)**.

Here, Plaintiff has been delinquent in pursuing the discovery. Plaintiff alleges that he requested his pre-Menard medical records through discovery and Defendants objected. (Doc. 121-1, p. 4). The Motion is silent as to when Plaintiff requested the records. On September 8, 2015, Plaintiff filed a motion requesting an extension of time to respond to Cady's discovery. (Doc. 84). The motion made no mention of Plaintiff's own discovery requests. (Doc. 84). The Court granted that request and extended both

11

the discovery deadline and the dispositive deadline at that time.  (Doc. 85).  Three days later, Defendants Cady and Butler filed another request for an extension of time on the grounds that they erroneously assumed that discovery was stayed due to Plaintiff's pending appeal of the denial of his request for a preliminary injunction.  (Doc. 84).  The Court granted that extension, and extended discovery until November 16, 2015 and the dispositive motion deadline until December 16, 2015.  (Doc. 87).  This represented a two month extension of the discovery period.

On December 16, 2015, the defendants filed their dispositive motions.  Two weeks later, for the first time, Plaintiff brought up his issues with discovery in a renewed motion to appoint counsel.  (Doc. 102).  Plaintiff also made several frivolous arguments that various pleadings of the defendants should be stricken.  (Doc. 103).  The Court set the motion for counsel and the motion to strike for a hearing.  (Doc. 104).  At the hearing, Plaintiff was most concerned with his current housing assignment.  (Doc. 113).  The Court appointed current counsel to represent Plaintiff at that time.  (Doc. 114).  As pointed out by Plaintiff, the Court specifically referenced Plaintiff's discovery issues in the motion appointing counsel.  (Doc. 114).  The Court also extended Plaintiff's time to respond to the summary judgment motions by an additional 60 days, granting Plaintiff a total of 90 days to file a response, in anticipation that Plaintiff's newly appointed counsel would need additional time.  (Doc. 114).  Counsel entered his appearance on January 26, 2016.  (Doc. 114).

Plaintiff's motion shows that counsel did not attempt to start getting the medical records until February 11, 2016.  Plaintiff also filed the Response 9 days prior to the deadline set by the Court.  Plaintiff did not ask for another extension of time.

In researching the applicable law, the Court found that in many of the cases where Rule 56(d) was invoked, the defendants had filed an early summary judgment motion before the close of discovery.  This is not the situation here.  Not only has discovery been closed since November 2015, but that deadline represented a two-month extension from the deadline initially set by the Court.  Although the Court recognizes that Plaintiff has proceeded pro-se until very recently, he has brought many issues to the Court's attention during the course of this litigation.  Plaintiff has sought injunctive relief (Doc. 44), asked for copies, (Doc. 34), prosecuted an appeal to the 7th Circuit that was denied on the merits, (Doc. 54; Doc. 123), requested that the Wexford defendants pay his filing fee, (Doc. 60), asked for a settlement conference (Doc. 66), requested the return of his filing fees, (Doc. 73), and asked the Court to strike defendants' motions (Doc. 103).  Plaintiff also specifically asked the Court to extend the discovery period. (Doc. 84).  Plaintiff may be a pro-se litigant, but he clearly knows how to petition the Court for relief.  At no time did he ask for relief regarding the discovery responses until December 2015, after discovery had closed.  The Court also notes that Plaintiff attached a significant number of medical records to his Complaint, some of which the Court has referred to in discussing the facts of this case.  (Doc. 1).  This suggests that Plaintiff is familiar with how to request medical records outside of the discovery process.

13

Additionally, the Court is not convinced that the medical records from Plaintiff's time prior to his incarceration at Menard are material to the facts of this case on summary judgment. Plaintiff has testified that he was treated more aggressively at Stateville and Cook County jail. The Court can consider that sworn testimony on summary judgment. Defendants have not contradicted that testimony with any evidence of their own or disputed Plaintiff's characterization of his treatment. In fact, Defendants argue on summary judgment that their treatment does not display deliberate indifference. Medical records of others' treatment has minimal relevance to that determination. Plaintiff also argues that he needs to secure an independent evaluation, but the Court has determined that such an exam will have no bearing on the outcome of these motions, as will be seen. For all of the above reasons, the Court **DENIES** Plaintiff's request for relief pursuant to Rule 56(d).

### Nurse Cady

Cady makes no arguments that Plaintiff did not suffer from a serious medical need in her motion for summary judgment. Therefore the Court will assume for the purposes of this analysis that he does. The only time Plaintiff mentioned Nurse Cady in his complaint is in reference to a September 12, 2012 visit. The medical records show that Plaintiff actually saw Cady along with Pollion on September 21, 2012. As this is the only visit referenced in Plaintiff's Complaint, it is the only visit for which Cady could be held liable.

No reasonable jury could find that Cady was deliberately indifferent at the September 21, 2012 visit. Cady was working with Pollion, a nurse practitioner, on that day. Pollion took a complete history, prescribed Tramadol, and attempted to schedule Plaintiff an appointment with Dr. Shepherd. Cady noted her orders. Cady did not deny Plaintiff medication on this day. She had no authority to prescribe medication. Plaintiff also cannot claim that Cady ignored his complaints about his medication not working, because Pollion prescribed his medication of choice on that day. On these facts, no reasonable jury could determine that Cady was deliberately indifferent because her role was only to assist and note the orders of the nurse practitioner, and the nurse practitioner referred Plaintiff to the doctor and prescribed his medication of choice. Cady is entitled to summary judgment.

**Dr. Shearing**

Although Shearing, Pollion, and Nwaobasi (collectively "Wexford Defendants"), recite the standard for determining whether a condition is a serious medical need, the Court cannot find that they actually made an argument that Plaintiff is not suffering from a serious medical need. Therefore, the Court will assume that he is for the purposes of this analysis.

Shearing is not entitled to summary judgment on this record. The evidence shows that he first saw Plaintiff in May 2013, more than 14 months after Plaintiff had been complaining of knee pain to medical staff at Menard. His notes of the meeting do not record any of Plaintiff's prior history at Menard. There is no mention that Plaintiff

has been on pain medication that has proven ineffective.   Shearing did not prescribe Plaintiff any pain medication during that visit.   He did not prescribe any treatment. There is a note to secure Plaintiff's prior medical records and to follow-up, but there is no evidence that Shearing did either.   On this record, having rendered virtually no treatment to Plaintiff, a reasonable jury could find that Shearing was deliberately indifferent.  Shearing is not entitled to summary judgment.

### Nurse Practitioner Pollion

Although it appears that no one has done more for Plaintiff than Pollion, regrettably that says very little.   Pollion is not entitled to summary judgment on the showing here.   Pollion repeatedly referred Plaintiff to the doctor for pain management evaluations.   However, it appears that Plaintiff seldom got those appointments and Pollion never took steps to ensure that he would.   Pollion specifically referred Plaintiff to Shearing and Shepherd, but there is no record that Plaintiff ever saw Shepherd and Shearing did not see Plaintiff until more than six months after his first visit with Pollion. Pollion never gave Plaintiff Tramodol again, despite the fact that Tramodol is the only drug that relieved Plaintiff's pain.   It is possible that Pollion may have done all she could do within the limits of her position, but Pollion has not submitted any evidence on this point.   As things stand, the evidence shows that despite Plaintiff's repeated complaints, Pollion never gave him a medication she knew to be effective after the first time she prescribed it.  It also shows that she was aware of Plaintiff's repeated claims of swelling, pain, and limited range of motion, but did kept persisting in a course of

16

treatment that had previously borne no results.   On these facts, a reasonable jury could determine that Pollion was deliberately indifferent.

### Dr. Nwaobasi

Nwaobasi is clearly not entitled to summary judgment.  Plaintiff told Nwaobasi that his pain had responded in the past to an opioid pain medication.  In response, Nwaobasi prescribed over-the-counter medication.  On multiple occasions, Nwaobasi prescribed medication for a one month period and then scheduled a follow-up for three months.   There has been no explanation to the Court why this was a reasonable procedure, or what Plaintiff was supposed to do for pain control during the two months between the time the pain medication ran out and the follow-up visit.  Nwaobasi also choose to rely on an x-ray, which does not show muscle and ligament injuries, to make diagnostic decisions, despite the fact that Plaintiff told him that he had previously been scheduled for an MRI.  It does not appear that Nwaobasi ever undertook to secure Plaintiff's prior medical records himself. Nwaobasi also prescribed medication previously shown to be ineffective.  On these facts a reasonable jury could conclude that Nwaobasi was deliberately indifferent to Plaintiff's knee pain.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Cady's Motion for Summary Judgment.  (Doc. 95).   The Clerk of Court is directed to enter judgment in her favor at the close of the case.  The Court **DENIES**  Nwaobasi, Shearing, and Pollion's Motion for

Summary Judgment.  (Doc. 99).  The Court also **DENIES** Plaintiff's request pursuant to

Rule 56(d).  (Doc. 121).

**IT IS SO ORDERED.**

**DATED: April 12, 2016**

*/s/ Stephen C. Williams*
**STEPHEN C. WILLIAMS**
**United States Magistrate Judge**

18